IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MORIN,

    Plaintiff,

v.

RAY KLEIN, Inc., d.b.a. PROFESSIONAL CREDIT SERVICE, an Oregon Corporation,

    Defendant.

Case No. 6:14-cv-984-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Michael Morin alleges defendant Ray Klein, Inc., d.b.a. Professional Credit Service violated the Fair Debt Collection Practices Act (FCDPA) by seeking to collect Morin's wife's debt from Morin himself. In Oregon, once a husband and wife separate, a spouse is not responsible for certain debts (like those at issue here) incurred by the other spouse. ORS 108.040(2). "Spouses shall be considered separated if they are living in separate residences without intention of reconciliation at the time the debt is incurred." ORS 108.040(3). At his deposition, Morin admitted he hoped to reconcile with his wife at the time she incurred the debts. Therefore, they were not "separated" under ORS 108.040(2) and Morin is liable for her debts.

1 – OPINION AND ORDER

Thus, Ray Klein did not violate the FDCPA and this Court GRANTS Ray Klein's motion for summary judgment, ECF No. 26.

## BACKGROUND

In 1991, Michael Morin married his wife Lori Morin. In 1998, the Morins bought a home to live in with their three children. In 2002, the Morins "were not getting along" and had trouble paying the mortgage. Michael Morin took the children and moved to an apartment in Aumsville. From 2002 to 2004, Lori would visit the apartment twice a month for a day or two at a time. From 2004 to 2006, Lori would visit every month or two for two to four days at a time.

Although the Morins were still not living together, in 2006 they co-signed a one-year lease for a house in Salem. In 2007, the lease converted to month-to-month, and Michael Morin still lives in the Salem house today. Lori kept some personal items at the Salem house and picked up her mail there. Lori had a key and would stay at the house once a month for a week or a week and a half.

Until 2009, the Morins would occasionally take the kids to the beach or camping. The Morins never divorced and never filed a petition for separation. Michael Morin never filed for divorce because he feared it would be expensive and he worried he would have to pay Lori alimony.

From April 2005 to December 2012, Lori incurred the debts at issue here: Molalla Utilities in April 2005; Salem Hospital in 2009; Dr. Gary Nishioka in April 2012; and Salem Hospital (again) in December 2012. Lori did not pay the debts and the debts were assigned to Ray Klein, a debt collector under the FDCPA.

2 – OPINION AND ORDER

In January 2014, Ray Klein filed a small claims action for $4,097.19 against Michael Morin. As noted, Morin argues he and Lori were separated when she incurred the debts and therefore he is not responsible for Lori's debts under ORS 180.040(2).

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Under ORS 108.040:

(1)(a) The expenses of the family and the education of the minor children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately;

    (b) As used in this subsection:

        (A) "Expenses of the family" includes only expenses incurred for the benefit of a member of the family.

3 – OPINION AND ORDER

>> (B) "Family" means the husband, wife and minor children of the husband and wife.

(2) Notwithstanding subsection (1) of this section, **after the separation of one spouse from the other spouse, a spouse is not responsible for debts contracted by the other spouse after the separation** except for debts incurred for maintenance, support and education of the minor children of the spouses.

(3) For the purposes of subsection (2) of this section, **spouses shall be considered separated if they are living in separate residences without intention of reconciliation at the time the debt is incurred**. The court may consider the following factors in determining whether the spouses are separated in addition to such other factors as may be relevant:

>> (a) Whether the spouses subsequently reconciled.

>> (b) The number of separations and reconciliations of the spouses.

>> (c) The length of time the spouses lived apart.

>> (d) Whether the spouses intent to reconcile.

>> (e) Whether the spouses have filed a petition for separation or dissolution.

(Emphasis added.)

Morin argues he and Lori were separated under ORS 108.040(2) and he is not liable for her debts. Ray Klein argues that at the time Lori incurred the debts (up to December 2012), the Morins intended to reconcile and thus, under ORS 108.040(3), Michael is liable for Lori's debts. It is undisputed that Lori's debts were for "expenses of the family."

At his deposition, Michael Morin testified to the following:

> Q. Okay. When she was there from 2006 to 2009 would you try to act as much like a together-family as you could for the kids?
>
> A. Yes, I'd – I was, you know, trying to keep us as a family.
>
> Q. So from 2006 to 2009 you were trying to keep the family together?

4 – OPINION AND ORDER

A. Correct.

Q. And that included your wife being together with you and the kids as a family unit?

A. Yes.

\* \* \* \*

Q. So let's go over the visits from that time period. Well, let's take it in three years again. 2010 to 2013 Lori would visit you once a month for one week, week and a half. Is that accurate?

A. It sounds about right.

\* \* \* \*

Q. But the frequency and duration is about the same from 2010 to 2013 as it was, as we previously talked about, from 2006 to 2009.

A. Honestly the – probably from 2012 to 2013 it was less frequent.

Q. Okay. And I mean, what's "less frequent"?

A. Well, I tried giving her a chance to, you know, get a job, help with the family and stuff, and finally I – I'm worn out. It – you know, I can only give her so many chances, so I was like pretty much telling her she just had to get her own place and leave. So yeah, it would be, she'd stay for maybe a few days here and there and then go wherever it is she's living now.

Q. Okay. So you said you were trying to give her a chance. You were trying to give her a chance so that you two could reconcile, get back together?

A. Correct.

Q. Okay. And I guess, well, from 2006 to 2009 you already testified that you wanted the family back together as a family unit?

A. Yes.

Q. Okay, So from 2010 to 2012 you were also giving her a chance, such that you two might reconcile.

A. Yes. It definitely was not the same as previously, because like I said, I was getting worn out on it, you know. It's – you can only give somebody so many chances.

Q. Right.

A. And, you know, so I –

5 – OPINION AND ORDER

> Q. You were getting worn out on it by 2012, but you were still trying.
>
> A. To a degree, yes.
>
> Q. And to a degree were you still trying, going into 2013?
>
> A. I'd pretty much almost given up.
>
> Q. Almost but not quite.
>
> A. Yeah.

Wood Decl., 16 – 19; ECF No. 27 (attorney objections omitted).

Based on Morin's own testimony, he and his wife were not separated without intention of reconciliation at the time Lori contracted the debts. *See* 108.040(3). Even in 2013, after Lori incurred the last debt at issue, Michael Morin had only "pretty much almost given up" on reconciliation. Wood Decl., Ex. 1, 17. Although getting "worn out on it" by 2012, Morin still at that point was, "to a degree" trying to reconcile. *Id.* Although Lori's visits from 2012 to 2013 were "less frequent," he admitted to trying to give her a chance so that they might reconcile. Morin fails to establish a genuine issue of material fact that he was "without intention of reconciliation at the time the debt" was incurred. ORS 108.040(3).

Apparently recognizing the strength of Ray Klein's arguments, Morin belatedly attempts to shift the goal posts. For the first time in this case, two month before trial and well after the close of discovery, Morin now argues that the debts were never assigned to Ray Klein, and that some of the debts were paid in full.

First, these belated arguments come too late. As noted by Ray Klein:

> [A plaintiff cannot raise a new theory for the first time at the summary judgment stage, after discovery has closed. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); *accord Wasco Products, Inc. v. Southwall Technologies,*

6 – OPINION AND ORDER

*Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."). That's because a "complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman*, 232 F.3d at 1292.

Reply, 3. Based on the complaint, Morin's theory—until seeing Ray Klein's motion for summary judgment—was clearly based on the argument that he and his wife had separated and therefore he was not liable for her debts.

Additionally, the allegations in his own complaint bar Morin from arguing the existence or the assignments of the debts at issue. In the complaint, Morin alleged Lori "received services" from the original creditors at issue. Compl., ¶ 8. Morin lists the debts by name and date. *Id.* Morin then alleges Lori's "delinquent debt was assigned to the defendant and it began collection attempts." Compl., ¶ 9. Morin may not, on the eve of trial, attempt to defeat summary judgment by contradicting his own complaint. The complaint is short and concise. Morin's complaint clearly revolved around his argument that he was not liable for Lori's debt under ORS 108.040(3). Having lost that argument based on his own testimony, Morin cannot suddenly shift gears.

## CONCLUSION

Ray Klein's motion for summary judgment, ECF No. 26, is GRANTED.

IT IS SO ORDERED.

DATED this 25 th day of October, 2015.

                                                         Michael McShane
                                           United States District Judge